PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON, | ) ) CASE NO. 4:11CV506 |
| Plaintiff, | ) ) |
| v. | ) JUDGE BENITA Y. PEARSON ) ) |
| YOUNGSTOWN ASSOCIATES IN RADIOLOGY, INC. WELFARE PLAN, *et al.*, | ) ) ) ) |
| Defendants. | ) **MEMORANDUM OF OPINION &** ) **ORDER** |

Pending before the Court on remand is the issue of whether Plaintiff Children's Hospital Medical Center of Akron ("Children's Hospital") has standing to challenge the administrator's decision to deny insurance coverage for treatment B.W., a minor child, received for leukemia.

Children's Hospital has filed a brief. ECF No. 73. Defendant Professional Risk Management has filed a brief in opposition. ECF No. 77. As did Defendants Youngstown Associates in Radiology, Inc. Welfare Plan and Youngstown Associates in Radiology, Inc. (collectively "Youngstown Associates in Radiology"). ECF No. 78. Children's Hospital has replied. ECF No. 80.

For the reasons that follow, the Court dismisses Plaintiff's Complaint due to a lack of standing.

## I. Background

In October 2009, Youngstown Associates in Radiology and Professional Risk Management denied payment to Children's Hospital for treatment B.W. was receiving for cancer. B.W.'s mother was an employee of Youngstown Associates in Radiology and had medical coverage under her employer's self-funded plan ("the Plan"). Professional Risk Management was the third-party administrator of the Plan.

The Plan contained an anti-assignment clause. The clause provided as follows:

> **Assignment of Benefits**. No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or change, and any attempt to do so be void. No benefit under the Plan shall in any manner be liable or subject to the debts, contracts, liabilities, engagements or torts of any person.

ECF No. 32.[1]

Upon B.W.'s admission to Children's Hospital, B.W.'s parents signed an assignment of benefits form. ECF No. 47 at PageID #: 336.[2] The assignment of benefits stated, in part:

> In consideration of any medical care provided to the above named patient, I assign to Children's Hospital Medical Center of Akron and the Physicians all my rights to any and all medical insurance benefits to which I am or may be entitled by any private or public payer.

ECF No. 47 at PageID #: 336. B.W.'s parents also presented their insurance card. Id. at PageID #: 335.

Children's Hospital received pre-authorization from Professional Risk Management for B.W.'s treatment, which included chemotherapy. Children's Hospital began treating B.W. with

---

[1] ECF No. 32 was filed manually under seal.

[2] ECF No. 47 is sealed.

(4:11CV506)

Gemtuzumab, a drug involved in a long-term clinical study. Professional Risk Management refused to cover treatment involving Gemtuzumab, causing B.W. to receive only one round of treatment with Gemtuzumab. ECF No. 32.

After performing treatment on B.W., Children's Hospital submitted claims for payment to Professional Risk Management. Professional Risk Management denied coverage for many of the claims that Children's Hospital submitted. Children's Hospital did, however, receive payment for services it provided that Defendants considered covered under the Plan. ECF No. 32.

On April 14, 2010, Children's Hospital attempted to appeal the denial of benefits. Professional Risk Management responded, stating that the appeal had been reviewed and denied. It also advised Children's Hospital that the Plan's anti-assignment clause barred Children's Hospital's appeal. ECF No. 32.

Upon denial of the appeal, Children's Hospital sought and received an assignment of insurance appeal rights from B.W.'s parents. ECF No. 32.

On August 31, 2010, Children's Hospital sent another appeal letter, including the assignment of insurance appeal rights. ECF No. 32. In response, Children's Hospital received a letter from the Meritain Health Appeal Department,[3] stating that the appeal was treated as though it was an appeal on behalf of the claim participant. *Id.* The appeal was denied. *Id.*

Children's Hospital entered into a services agreement with PrimeNet, Inc. ECF No. 47 at PageID #: 358. The purpose of the agreement was to "establish[] a contracting provider network for Payors to improve the collective purchasing power of the Payors, and thereby providing the

---

[3] Meritain Health, Inc. is the parent of Professional Risk Management.

3

(4:11CV506)

Payors with a more cost efficient health delivery system." *Id*. This agreement required Payors to pay Children's Hospital directly. *See id.* at PageID #: 363. Professional Risk Management also had a preferred provider organization (PPO) contract with PrimeNet.

Children's Hospital has filed a Complaint (ECF No. 1), seeking recovery for the denied claims.

## II. Standard of Review

When an ERISA plan gives the plan administrator discretion in interpreting its terms or making benefits determinations, a court reviews the administrator's decision under the deferential arbitrary and capricious standard of review. *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Under the arbitrary and capricious standard of review, the court must uphold the administrator's decision if the administrator's interpretation of the plan's provisions is "reasonable" or "rational." *Price v. Bd. of Tr. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (quoting *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). The court "review[s] not only the insurer's conclusion, but also its reasoning." *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007).

In reviewing the decision of the plan administrator, the Court may only consider the evidence in the administrative record, as that is the evidence that the plan administrator considered. *Wilkins*, 150 F.3d at 615. This standard of review does not require courts to "rubber stamp[]" a plan administrator's decision, however. *Schwalm*, 626 F.3d at 308. "A court must review the quantity and quality of the medical evidence on each side." *Id.* (quoting *Evans v.*

4

(4:11CV506)

*UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006)). The decision must be upheld if it results from "a deliberate principled reasoning process" and is supported by "substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Plaintiff bears the burden of proving the plan administrator's decision was arbitrary and capricious. *Farhner*, 645 F.3d at 343.

### III. Discussion

The parties dispute whether Children's Medical Center, an assignee, has standing to challenge the administrator's decision.

ERISA standing requires that a plaintiff be a plan "participant," "beneficiary," or "fiduciary." 29 U.S.C. § 1132(a). A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may be become entitled to benefits thereunder." 29 U.S.C. § 1002(8). A health care provider is a beneficiary under ERISA when it "has received a valid assignment of benefits." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991); *see also City of Hope Nat. Medical Center v. HealthPlus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("[c]onsistent with the other circuits which have addressed the issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties.").

In this case, B.W.'s parents attempted to assign their benefits under the Plan to Children's Medical Center, but Defendants contend that these assignments were not valid due to the Plan's anti-assignment clause. Thus, the standing dispute boils down to whether the anti-assignment clause in the Plan is enforceable.

5

(4:11CV506)

An assignment of benefits is invalid "if the plan contains an unambiguous anti-assignment provision." *Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) (collecting cases); s*ee also Select Specialty Hospital v. National City Bank Health & Welfare Plan*, No. 1:07CV349, 2008 WL 268901, at *3 (W.D.Mi. Jan. 25, 2008) (holding that unambiguous anti-assignment clause invalidated patient's assignment of insurance benefits).

Children's Hospital argues that the anti-assignment clause is ambiguous in the following ways: (1) it reads like an unenforceable spendthrift clause; and (2) it fails to differentiate between contracting and non-contracting providers, and thus, has the effect of overlooking the PPO agreement. ECF No. 73 at PageID #: 774-78. Children's Hospital also argues that the fact that it bears the risk of non-payment means that the assignments under which it received rights were valid. *Id.* at PageID #: 779-80. As explained below, each of these arguments fail.

**A. Spendthrift Clause**

Children's Hospital argues that the Plan's anti-assignment clause "reads like a spendthrift clause." *Id.* at PageID #: 775. Children's Hospital reasons that spendthrift clauses masquerading as anti-assignment clauses are unenforceable under *Hermann Hospital v. MEBA Medical Benefits Plan*, 959 F.2d 569 (5th Cir. 1992) ("*Hermann II*"). *Id*.

Both Youngstown Associates in Radiology and Professional Risk Management argue that the anti-assignment clause in this case is distinguishable from the one in *Hermann II*. *See* ECF Nos. 78 at PageID #: 854-55 & 77 at PageID #: 833-34. Professional Risk Management also points out the spendthrift clause analysis in *Hermann II* was an "alternative rationale" supporting the court's decision that the clause was unenforceable. ECF No. 77 at PageID #: 833.

6

(4:11CV506)

The clause in *Hermann II* was as follows:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

*Hermann II*, 959 F.2d at 569 (overruled on other grounds by *Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (per curiam).[4]

In another case, the Fifth Circuit held that an anti-assignment clause did not read like a spendthrift clause in the vein of *Hermann II*. *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348 (5th Cir. 2002). The anti-assignment clause in *LeTourneau* was as follows:

> Medical coverage benefits of this Plan may not be assigned, transferred or in any way made over to another party by a participant. Nothing contained in the written description of Wal Mart medical coverage shall be construed to make the Plan or Wal Mart Stores, Inc., liable to any third-party to whom a participant may be liable for medical care, treatment, or services.

*Id.* at 349. The Fifth Circuit held that this clause "[i]n no way resembl[ed] typical spendthrift trust provisions." *Id.* at 351. The clause was "unquestionably directed at providers of health care services such as LeTourneau in precisely the way that the anti-assignment language in *Hermann II* was not." *Id.*

The Sixth Circuit has not analyzed whether an anti-assignment clause in a healthcare benefits plan case reads like a spendthrift clause. And so, it has not invalidated an anti-

---

[4] As Professional Risk Management points out "[n]either Children's [Medical Center] nor the Fifth Circuit in Hermann explained what exactly was meant by "typical 'spendthrift' language" in that case." ECF No. 77 at PageID #: 833 (citation omitted).

7

(4:11CV506)

assignment clause as being too similar to a spendthrift clause let alone held that this would be sufficient to invalidate an anti-assignment clause. A district court within this Circuit has presided over a case in which the plaintiff made a spendthrift clause argument: *Select Specialty Hospital*. That court did not address the spendthrift argument directly. Rather, it held that the anti-assignment clause was unambiguous and enforceable. 2008 WL 268901, at * 3. In reaching this conclusion, the court held that the clauses's lack of a reference to health care providers did not render the plan ambiguous. *Id*.

The clause at issue in the case at bar is not a spendthrift clause. Although there is no direct mention of providers, as was the case in *LeTourneau*, there is also no mention of participants or beneficiaries, as was the case in *Hermann II*. Instead, the Plan's language focuses on benefits. By focusing on benefits the Plan's anti-assignment clause is more akin to the clause in *LeTourneau*, especially as the *LeTourneau* clause also initially references benefits before shifting its focus to providers.

Children's Medical Center's spendthrift argument fails.

**B. Contracting and Non-Contracting Providers**

Children Medical Center next argues that the Plan's anti-assignment clause is ambiguous because it fails to differentiate between contracting and non-contracting providers. ECF No. 73 at PageID #: 776-77. Children's Hospital maintains that the anti-assignment clause fails to account for the PPO contract that obligates direct payment to Children's Medical Center an obligation Professional Risk Management has honored by making direct payments to Children's Medical Center. *Id.* at PageID #: 777-78.

8

(4:11CV506)

Both Professional Risk Management and Youngstown Associates in Radiology argue that the mere existence of the PPO contract does not affect the anti-assignment clause. *See* ECF Nos. 77 at PageID #: 834-39 & 78 at PageID #: 855-56.

Children's Hospital relies primarily on *University of Tennesee William F. Bowld. Hosp. v. Wal-Mart Stores, Inc.*, 951 F.Supp.724 (W.D.Tenn. 1996), in making its argument. In that case, the court held that the anti-assignment clause at issue was ambiguous "when read in light of other provisions in the Plan allowing for direct payment to medical providers." *Id.* at 731. The paragraph immediately following the anti-assignment clause contained an exception that explicitly authorized direct payment to medical service providers. *Id*.

*University of Tennessee* is not analogous to the circumstances in this case. Indeed, the plan in *University of Tennessee* explicitly provided for direct payment. The Plan in this case does not. Rather, the direct payment is permitted by a separate contract. When interpreting ERISA plans, general contract law principles apply. *Tate v. General Motors, LLC*, 538 F.App'x. 599, 603 (6th Cir. 2013) (citation omitted). Thus, extrinsic evidence, like the PPO contract, is only relevant once a provision in an ERISA plan has been found to be ambiguous.[5] *See id*.

---

[5] In its reply brief (ECF No. 80 at PageID #: 868), Children's Hospital references the administrative services agreement between Meritain (Professional Risk Management's parent) and Youngstown Associates in Radiology. But, this is superfluous for the same reason as the PPO contract: the Plan must be ambiguous in order to use an extraneous document as evidence. Children's Hospital contends that four documents ((1) the Plan, (2) the administrative services agreement, (3) Children's Hospital's PPO with PrimeNet, and (4) the PPO between the Plan or Professional Risk Management) "combine to describe the relationship between the Plan, the Plan Participant, and Children's Hospital." *Id.* at PageID #: 869. They may, but that is not relevant to determining whether the anti-assignment clause in the Plan is ambiguous. Because the clause is not ambiguous, the other documents are irrelevant to the issue of standing.

9

(4:11CV506)

In addition, the PPO and the Plan are not contradictory. As the Fifth Circuit held in *LeTourneau*, an assignment of rights may be invalid, even if there is an assignment of benefits that the plan honors. *LeTourneau*, 298 F.3d at 352. In that case, the plan paid plaintiff for the original prosthesis it provided, because the plan covered that procedure. *Id*. The plan provider later denied coverage for a procedure involving a replacement socket on the theory that the plan did not cover such a procedure. *Id*. The plaintiff brought an ERISA action, and the plan argued that plaintiff lacked standing on account of the anti-assignment provision. *Id*. The Fifth Circuit held that the plan provider acted within its rights, as the anti-assignment clause was not trumped by the prior payment. *Id*. That court reasoned that the form the patient signed "although ineffective to assign her other contractual or statutory rights under ERISA, did effectively assign to her health care services provider for her right to receive payments for duly *covered* claims." *Id*. (emphasis in original). In this case, covered claims have been paid directly. Children's Medical Center, like the plaintiff in *LeTourneau*, is challenging the denial of a claim. The Plan's anti-assignment clause prevents that. It does not, however, prevent Children's Hospital from receiving payments for covered claims, like the ones it has already received.[6]

Children's Hospital's argument fails.

---

[6] Children's Hospital also argues that Defendants are estopped from enforcing the anti-assignment provision. Estoppel is not proper in this case. The Sixth Circuit has held that "estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (*en banc*). Relying on *Sprague*, the Sixth Circuit upheld a district court's decision denying health care providers request to amend a complaint to add an estoppel claim. *See Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 521 (6th Cir. 2010).

(4:11CV506)

### C. Risk of Non-Performance

Finally, Children's Hospital argues that it bore the risk of nonperformance, and, as a result, the assignment to it was valid. ECF No. 73 at PageID #: 779-80. Children's Hospital reasons that it cannot collect from B.W.'s family due to the terms of its PPO contract. Id. at 780. Thus, without being able to collect from Youngstown Associates in Radiology or Professional Risk Management, it is without recourse. Id. Children's Hospital argues that, according to Brown v. Blue Cross Blue Shield of Tennessee, Inc., No. 1:14CV223, 2015 WL 3622338 (E.D.Tenn. Jun. 9, 2015), the fact that Children's Hospital bears the risk of non-performance compels the conclusion that the assignment was valid. Id. at PageID #: 779-80.

Defendants both argue that *Brown* does not support Children's Hospital's position. Professional Risk Management points out that *Brown* does not involve an anti-assignment clause. ECF No. 77 at PageID #: 843-44. Youngstown Associates in Radiology argue that *Brown's* only relevancy in that it distinguishes between the right to receive payment and rights under an ERISA plan. ECF No. 78 at PageID #: 858. In reply, Children's Hospital argue that Defendants' arguments sidestep the fact that Children's Hospital has borne the risk of non-payment. ECF No. 80 at PageID #: 870-71.

*Brown* does not support the conclusion for which Children's Hospital is advocating. First, the *Brown* court held that the plaintiff lacked standing. *See Brown*, 2015 WL 3622338, at *7. Second, the case focused on the difference between direct payment authorization, *i.e.*, directing payment to an entity like Akron Children's, and assignment, not how an anti-assignment clause affects the validity of an assignment of benefits. *See id.* at *6-7. Finally,

11

(4:11CV506)

although *Brown* does hold that an assignment requires a transfer of risk, it does not hold that a transfer of risk trumps a valid anti-assignment clause.

Therefore, Children's Hospital's argument fails.[7]

## IV. Conclusion

The Court holds that Children's Hospital lacks standing. In addition, the Court incorporates its prior ruling that the Plan Administrator did not arbitrarily and capriciously deny coverage for B.W.'s treatment in light of the plain language in the Plan. ECF No. 62.

Accordingly, the Court dismisses Plaintiff's Complaint.


IT IS SO ORDERED.


 September 21, 2018              */s/ Benita Y. Pearson*
Date                             Benita Y. Pearson
                                 United States District Judge

---

[7] It also merits mention that Children's Hospital has received payment for claims that the Plan covers. The only claims for which it has not received payment for are claims that the Plan Administrator has deemed uncovered.